755 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROBERT J. LOXTON, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 No. 83-1771
 United States Court of Appeals, Sixth Circuit.
 1/14/85
 
 Before: ENGEL and WELLFORD, Circuit Judges; and WEICK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner seeks judicial review of an order entered by the district judge establishing appellant's entitlement to disability benefits under the Social Security Act during the limited period of January of 1980 to December 1981.
 
 
 2
 Appellant Loxton brought this action pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C. 405(g), for review of a final decision of the Secretary of the Health and Human Services Department (hereinafter the 'Secretary') finding that the appellant was not entitled to any period of disability payments under the Act. The district court reinstated benefits for a limited period only as decided by the Administrative Law Judge (ALJ) after evaluating the relevant evidence. (The ALJ's opinion was reversed by the Secretary who now indicates agreement with the ALJ and the district court.)
 
 
 3
 Appellant Loxton is 38 years old and has a high school education. His work experience was primarily that of a beverage distributor worker-foreman. He has suffered three cervical fusion surgeries during the period of 1978-1981, and ceased efforts to do light work for his beverage employer in January of 1980 because of persistent neck pains. Appellant wears a body brace for neck support and has been engaging in only casual activity around his home since the last operation on July 28, 1981.
 
 
 4
 There is no dispute but that the appellant cannot perform his former foreman job due to the heavy lifting required, and that he suffers from a severe impairment under 20 C.F.R. Sec. 404.1520(c). The ALJ and the district court, however, found that Loxton became capable of performing comparably gainful 'sedentary' work under 20 C.F.R. Sec. 404.1567(a) soon after his third (1981) operation. Thus his period of benefits awarded covers the period from the time he stopped working to the end of the year after his third operation, a total of two years.
 
 
 5
 The issue in this case focuses on the substantiality of evidence in support of the ALJ's determination that by the end of 1981 appellant was able to perform sedentary work. The Appeals Council allowed the appellant to provide additional information about his medical condition during the relevant time period made by his personal doctor (Dr. E. J. Nebel). This portion of medical evidence was a matter of record before the district court, but not before the ALJ.
 
 
 6
 At the ALJ hearing the appellant described his condition at one point after the third operation by stating, 'I feel very good.' Yet he seemed to qualify this statement by immediately thereafter adding: 'I can't move as much with this brace on so it's hard to tell.'[1]
 
 
 7
 The testimony of the vocational expert, Dr. Asa Brown, is also subject to conflicting interpretations. After reviewing appellant's work history, Dr. Brown suggested that the appellant had acquired the necessary skills for clerical or public contact work. Dr. Brown also noted that he had 'placed a number of people who were in some pretty cumbersome kinds of neck appliances in sedentary jobs,' but he explained that the critical factor in most such cases was whether the person could turn from the waist rather than the neck. Furthermore, Dr. Brown seemed to admit that the question boiled down to that of subjective pain. 'If any movement brings on a significant pain,' acknowledged Dr. Brown, 'then the mere expression of life becomes a compounding factor.'
 
 
 8
 The medical evidence from the treating physician, Dr. Nebel, is crucial on the question of subjective pain, and Loxton's ability to resume work. The ALJ noted that Dr. Nebel had refused to allow the appellant to return to the light work he had been performing until he quit in 1980. The appellant testified that his doctor 'has me doing nothing. I can't do any work, any heavy lifting, I cannot drive, I cannot get out in the car for a ride as such as long as it doesn't bother me.' Dr. Nebel took the position that the appellant remained disabled after this third operation.
 
 
 9
 In arguing before the Appeals Council for reconsideration of the ALJ's decision, the appellant presented into evidence Dr. Nebel's notes monitoring the appellant's post-surgical process from September 1981 to July 21, 1982. Throughout this monitoring period following the operation, Dr. Nebel expressed the hope that Loxton would ultimately be capable of light or sedentary work. Yet Dr. Nebel's notes through July 1982 take the position that the appellant's condition was still too fragile and uncertain in his view to attempt any resumption of work. The Secretary discounted Dr. Nebel's medical opinion and emphasized the more positive and 'asymptomatic' nature of appellant's objective physical condition after surgery.
 
 
 10
 The specific question then is whether there was substantial evidence for the ALJ's determination that the appellant could engage in sedentary work after 1981. As the Sixth Circuit has recognized, a finding that a claimant with a severe impairment is still capable of substantial sedentary work rebuts the claimant's charge of disability under the Social Security Act. Kirk v. Sec. of Health and Human Services, 667 F.2d 524, 528 (6th Cir. 1981), cert. denied, 103 S. Ct. 2428 (1983). 'Sedentary' work is defined as employment that requires 'lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.' 20 C.F.R. Sec. 404.1567(a). Although defined as employment 'which involves sitting,' a certain amount of 'walking and standing is often necessary in carrying out job duties.' Id.
 
 
 11
 In this kind of case where the existence of an underlying severe impairment is established, the evidentiary inquiry requires an assessment whether the individualized subjective pain suffered by the claimant is disabling, especially when coupled with objective medical evidence of disability. As stated in Beavers v. Secretary of Health and Human Services, 577 F.2d 383, 386 (6th Cir. 1978), each case must be judged separately and any evaluation of pain must depend heavily on the credibility of the claimant:
 
 
 12
 There is no requirement that the underlying medical basis for subjective complaints of pain clearly indicate that such pain would be inevitable. If that were the case, there would be no occasion for subjective, personal testimony in a disability hearing, and a person with pain which eludes precise diagnosis would be excluded from the protection offered by the Social Security disability system. Pain is a highly subjective phenomenon, and each person has an individual 'threshold of pain,' beyond which he or she is unable to ignore pain and function normally. Determining in an individual case whether suffering has exceeded that threshold, rendering the individual disabled, is necessarily a personal inquiry, and depends heavily on the credibility of the claimant.
 
 
 13
 Here the district court reinstated the ALJ's determination but failed to evaluate the possible significance of the new evidence not considered by the ALJ. This lack of consideration can be at least partly explained by the posture in which it received the case. The district judge was primarily considering whether the Appeals Council was correct in holding that the appellant was entitled to no disability benefits at all. We do take into account the new medical evidence from Dr. Nebel's post-surgical monitoring of the appellant.[2]
 
 
 14
 We believe that it is unclear in light of the entire record whether Loxton's period of disability terminated soon after his third operation in 1981. We agree with the district court's conclusion, however, that appellant is entitled to benefits for the two years, and that there should be no delay in paying Loxton those benefits. We doubt that substantial evidence supports a termination as of December 31, 1981, although termination of benefits was apparently expected, absent further complications, at some point during 1982. Accordingly, we remand this dispute to the Secretary for further consideration of Loxton's ability to do light or sedentary work after his operation in 1981, and thereafter. The Secretary on remand should determine whether termination is appropriate and at what time, and further medical or other evidence may be considered in reaching this decision.
 
 
 15
 The case is accordingly remanded to the Secretary, but benefits for the years 1980 and 1981 are ordered.
 
 
 
 [1]
 The entire colloquy, in pertinent part, reads:
 Question: [W]hat's the difference now of how you feel and how you felt prior to your surgery of July, 1981 [the third operation]?
 * * *
 Answer: I feel very good. I can't move as much with this brace on so it's hard to tell. I do take this off when I take a shower and such, but I don't do that much bending to really try and test it out. I am hoping that this is going to take care of it. As far as painwise goes, I have some if I sleep wrong at night. If I sleep in a wrong position, I wake up in the morning and I'll be sore for an hour or two. Like the previous operation, I had pain all the time, now its----
 Question: You mean the previous one being March of 1980? [the second cervical fusion operation]
 Answer: Yes, that's right. Now as far as the pain goes, it helps due to this brace----
 (J/A 54-55).
 
 
 [2]
 Under Section 205(g) of the Social Security Act, new evidence may be considered in an administrative appeal if it 'is material and [if] there is good cause for failure to incorporate such evidence into the record in a prior proceeding.' The appellant's stated reason for not producing the notes of the ALJ hearing was that they 'did not come into existence until after the hearing record had been closed.' Even though the Appeals Council discounted the probative value of such evidence, the Council accepted and considered it